IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| VS. | CASE NO. 2:11CR166-SA-JMV |
| LINO GAMEZ | DEFENDANT |

### MEMORANDUM OF LAW IN
### SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS

Comes now the Defendant Lino Gamez, by and through his counsel of record, and provides this Honorable Court with a Memorandum of Law in support of his Motion to Suppress, pursuant to the Fifth Amendment of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution seeking suppression of all statements made by Defendant during the course of an illegal custodial interrogation conducted by agents of the U.S. Government at his place of employment.

### Issue Presented

Whether FBI agents performed an illegal custodial interrogation on Defendant Lino Gamez, when they arrived at his place of employment, made a show of authority by carrying pistols and identifying themselves as FBI agents who were there to interview him about having sexual intercourse with an under-aged female, and further, interrogating him in the business manager's office without informing him of his Miranda rights.

### Facts

On or about November 18, 2011, FBI agents Thomas Bohlke and Ryan Arton arrived at Defendant Lino Gamez's place of employment, Cal Western Packaging Corporation, in Memphis. The agents were carrying pistols and identified themselves as FBI agents. The agents

advised Defendant Gamez that they were there to interview him about having sexual intercourse with an under-aged female named Tabitha Griffin. Without ever informing Defendant Gamez of his Miranda rights, the agents relocated Defendant Gamez to the business manager's office, and the agents began to interrogate him about his relationship with Ms. Griffin.

Defendant Gamez inquired as to whether or not he needed a lawyer and the agents evaded his question. Defendant Gamez advised the agents that he had never had sex with Ms. Griffin, that he had never video-taped any under-aged females engaged in sexual acts, and that he had never furnished Ms. Griffin with drugs or alcohol. The agents expressed their suspicion of Defendant Gamez's involvement with Ms. Griffin by stating that the girl had previously provided an incriminating statement to the FBI. Because of the agents' indication of their suspicion, Defendant Gamez felt compelled to continue to answer their questions. At that point, Defendant Gamez made statements against his interest. At no point during the interrogation did the agents advise Defendant Gamez of his Miranda rights.

## Argument

A criminal suspect in police custody must be informed of his or her rights to remain silent or consult an attorney. *Miranda v. Arizona*, 384 U.S. 436 (1966). Whether a person is in "custody" for Miranda purposes is an objective determination involving two discrete inquiries: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99 (1995).

The court in *Terry v. Ohio*, 392 U.S. 1 (1968), articulated several examples of circumstances that might indicate a seizure, including, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the

citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Further, the court in *U.S. v. Mendenhall*, 446 U.S. 544 (1980), articulated that a person is seized when "by means of physical force or show of authority, his freedom of movement is restrained."

Given the circumstances of Defendant Gamez's custodial interrogation, it was reasonable for him to believe that he was not at liberty to terminate the interrogation and leave. Two FBI agents made a show of authority by entering Defendant Gamez's place of employment, while carrying pistols. They informed him that they were there to interview him about his suspected involvement in sexual intercourse with an under-aged female. The agents took him into the vacant business manager's office, restraining his freedom of movement, and began to interrogate him. Defendant Gamez inquired as to whether or not he needed a lawyer, and the agents gave a vague response. Further, the agents manifested their suspicion of Defendant Gamez's involvement by insisting that the under-aged female had provided them with a statement, indicating that compliance with their questions might be compelled.

The fact that the agents indicated to Defendant Gamez their beliefs concerning his culpability by expressing to him that the under-aged female had provided them with a statement should bear on the assessment of whether Defendant Gamez was in custody. The Supreme Court has held that "an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." *Stansbury v. California*, 511 U.S. 318 (1994). As stated above, the agents manifested their

suspicion to Defendant Gamez during interrogation by insisting that the under-aged female had incriminated him, after he had denied involvement with her. This indication of suspicion certainly affected Defendant Gamez's perception of his freedom to leave.

Finally, the fact that the agents interrogated Defendant Gamez at his place of employment does not weigh against a finding that he was in custody. The Fifth Circuit has addressed this issue, stating that it is "certain that the mere fact that interrogation takes place in the familiar surroundings of the defendant's home or place of business rather than in the police station does not necessarily mean the defendant is not being subjected to custodial interrogation." *U.S. v. Phelps*, 443 F.2d 246 (5th Cir. 1971). Even though the agents interrogated Defendant Gamez at his place of employment, he did not feel free to terminate the interrogation and leave.

## Conclusion

Because Defendant Gamez was in custody when the agents interrogated him at his place of employment, they were required to advise him of his *Miranda* rights. They did not do so, in clear violation of the Fifth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. Therefore, all statements made by Defendant Gamez during the illegal custodial interrogation should be suppressed and inadmissible at trial.

                                                  **Respectfully submitted,**

                                                  /s/William F. Travis
                                                  **William F. Travis**