```
 1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF MISSISSIPPI
 2


 3

 4  UNITED STATES OF AMERICA         .         Cause No. 2:11CR166
                                     .
 5          Plaintiff                .         Oxford, Mississippi
                                     .         June 12, 2012
 6             v.                    .         9:10 a.m.
                                     .
 7  LINO GAMEZ                       .
                                     .
 8          Defendant                .
    .  .  .  .  .  .  .  .  .  .  .  .  .
 9


10


11


12                    JURY TRIAL - VOLUME II
              BEFORE THE HONORABLE SHARION AYCOCK
13                 UNITED STATES DISTRICT JUDGE


14


15  APPEARANCES:


16
    For the Government:        United States Attorney's Office
17                             Northern District of Mississippi
                               BY:  PAUL D. ROBERTS, ESQ.
18                             900 Jefferson Avenue
                               Oxford, Mississippi  38655-3608
19
    For the Defendant:         WILLIAM FARLEY TRAVIS, ESQ.
20                             Travis Law Office
                               8619 HWY 51 North
21                             Southaven, Mississippi 38671-3635


22  Court Reporter:            Rita Davis Young, FCRR, RPR
                               911 Jackson Avenue, Room 369
23                             Oxford, Mississippi  38865
                               (662) 416-2038
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.
```

```
                              INDEX
```

Defense rests.................................................11

THE COURT:
                    Jury Instructions........................11

CLOSING ARGUMENT:
                    Mr. Roberts.............................23

                    Mr. Travis..............................32

                    Mr. Roberts.............................39

THE COURT:
                    Verdict.................................45

                    Jury Polled.............................46

                    Adjourned...............................48

CERTIFICATE OF COURT REPORTER...............................49

1  (CALL TO ORDER OF THE COURT)

2          **THE COURT:**  Okay.  You've got a set of jury

3  instructions from yesterday that include the corrections that

4  we discussed yesterday.  Have you had an opportunity to look at

5  those?

6          **MR. ROBERTS:**  The Government has, Your Honor.

7          **MR. TRAVIS:**  Yes, Your Honor.

8          **THE COURT:**  Are you satisfied with the corrections?

9          **MR. ROBERTS:**  Yes, Your Honor.

10          **MR. TRAVIS:**  Yes, Your Honor.

11          **THE COURT:**  Okay.  Now, this morning, I've asked

12  Blake to prepare for you an instruction regarding Counts 1 and

13  2.  Do they have a copy of it?

14          **MR. ADAMS:**  Yes, ma'am.

15          **THE COURT:**  Let's address that in general.  First of

16  all, I have pulled some -- I haven't; Blake Adams has pulled

17  some cases.  Give credit where credit is due.

18      Mr. Roberts, was the Government able to find any cases on

19  the question of whether the producing of the depictions has to

20  be the sole purpose?

21          **MR. ROBERTS:**  Your Honor, I was able to find none

22  that said it had to be the sole purpose.  I found -- some other

23  people -- and I have to give credit to the network of people

24  that helped me -- found some cases.  And I forwarded those to

25  Mr. Adams.  The most helpful, I think, is the case cited by

1  Your Honor, *Lebowitz* and *Sirois*, which was cited, I believe.

2  Could find nothing in the Fifth Circuit.

3      **THE COURT:**  And you found nothing in the Fifth

4  Circuit?

5      **MR. ROBERTS:**  Nothing in the Fifth Circuit.

6      **THE COURT:**  Okay.  Well, that was our belief.

7      **MR. TRAVIS:**  I had just submitted that *Levy* case,

8  Your Honor, to Blake earlier on this morning; and that was the

9  only thing I was able to find.

10      **THE COURT:**  And we'll talk about that one in a

11  minute.  Now, the -- let's see.  Is the *Levy* case about the --

12  yes, it's about the depictions.

13      **MR. TRAVIS:**  Yes, ma'am.

14      **THE COURT:**  Okay.  In light of the cases that we have

15  reviewed -- just so the record's clear, I'll recite those.

16  Well, good morning, Rita.  I just realized I've got a different

17  court reporter this morning.  Excuse me for not speaking

18  earlier.

19      There's an Eighth Circuit case, *United States v.*

20  *Raplinger*, R-a-p-l-i-n-g-e-r.  It is cited at 555, F.3d 687.

21  It's an Eighth Circuit case, 2009.  *United States v. Ortez*

22  *Graulau*, G-r-a-u-l-a-u, Fifth Circuit case, decided May 2008.

23  And then the case that we mentioned yesterday is an Eleventh

24  Circuit case, United States of America v. Lebowitz,

25  L-e-b-o-w-i-t-z, an April 2012 case.

1      And then also the -- many -- mentioned in these cases is

2 the case *United States v. Sirois*, S-i-r-o-i-s, which is a

3 Second Circuit case, 1996, 87 F.3rd 34.  All of those cases

4 indicate, to me, that it does not -- the statute does not

5 require that the illicit sexual conduct be conducted solely for

6 the purpose of producing depictions or visual images.

7      I don't find, and I didn't find, Mr. Travis -- we didn't

8 find any cases to indicate that it had to be the sole purpose.

9 It seems like *Sirois* goes back to the premise that it can be

10 one of the dominant purposes.

11          **MR. TRAVIS:**  Thank you, Your Honor.

12          **THE COURT:**  With that in mind, you've been presented

13 with a draft of an instruction that comes straight from the

14 *Sirois* case.  Have you had an opportunity to review that

15 instruction?

16          **MR. ROBERTS:**  Your Honor, the Government has; and we

17 have no objection to it.

18          **MR. TRAVIS:**  I've reviewed it for the defense.  We

19 have no objection, Your Honor.

20          **THE COURT:**  I think it would be appropriate to give

21 that instruction, and it will be given.  Now, let's talk,

22 Mr. Travis, about the submission of your case, *United States of*

23 *America v. Levy*?

24          **MR. TRAVIS:**  Yes, Your Honor.

25          **THE COURT:**  I have not read it from cover to cover,

1  just briefly looked at it.  So tell me what it says and why you

2  think we should give it.

3          **MR. TRAVIS:**  Just briefly, in a nutshell, Your Honor,

4  it gets to the weight of the evidence, so to speak, as far as

5  the inability of the jury to have viewed the quality of any

6  photographs, videos, and/or any type of visual evidence that

7  was not produced in this trial.

8          **THE COURT:**  Does it set forth within the context of

9  the case a proposed instruction?

10          **MR. TRAVIS:**  Not to my knowledge, Your Honor.

11          **THE COURT:**  Tell me what your proposed instruction

12  might read like.

13          **MR. TRAVIS:**  Your Honor, I would cite something to

14  the extent that if the jury is unable to determine from the --

15  you know, what are -- what is or is not sexually explicit

16  conduct without a visual depiction, something of that nature.

17  But I'm not aware of any instruction that came out of that

18  case.

19          **THE COURT:**  Was there a visual depiction in this

20  case?

21          **MR. TRAVIS:**  May I see -- Your Honor, if you've got

22  the copy --

23          **THE COURT:**  Yes.  Let me hand it back to you.  I read

24  the portion that talked about a blurry photo, and that they

25  couldn't make out the photo itself.

1         **MR. TRAVIS:** That's correct, Your Honor. It was a

2 photograph that was, I believe, admitted into evidence;

3 however, it was not clear. It was a blurry photograph, and it

4 got into the debate over whether or not the visual depiction

5 was adequate or not.

6         **THE COURT:** So in this case, we're really looking at

7 the content of the depiction.

8         **MR. TRAVIS:** Correct.

9         **THE COURT:** And I'm quoting from the case, "If the

10 jury cannot determine what is being depicted in a photograph,

11 the jury is unable to determine whether sexually explicit

12 conduct is being depicted."

13         **MR. TRAVIS:** Yes, ma'am.

14         **THE COURT:** Of course, that's a little different than

15 we have in this case, because we have no photographs. They've

16 got to either believe the victim in this case or not believe

17 her.

18         **MR. TRAVIS:** We'll certainly argue that, Your Honor.

19 And in support of Mr. Lino Gamez's judgment of acquittal that

20 we made, we're simply submitting, under the theory of weight of

21 evidence, as well as the lack of the best evidence available to

22 the jury, that we would make that part of the record for

23 purposes of appeal.

24         **THE COURT:** Okay. Mr. Roberts, your response to the

25 proffered instruction?

1        **MR. ROBERTS:**  Your Honor, I have not -- the proffered

2   instruction about --

3            **THE COURT:**  An unwritten instruction at this point

4   that's something to the extent of "the weight of the evidence

5   given that the jury has not been presented a depiction."

6            **MR. ROBERTS:**  Your Honor, my theory is that the --

7   that the testimony of Tabitha and, also, the testimony of the

8   officer is that it was taken of them having intercourse; that

9   they can rely on that.  And sexual intercourse is certainly

10  defined as sexual activity under 2256, so I think it's included

11  in the instructions, along with the description of what

12  involves sexual activity.

13     And I guess it would be jury instruction -- for purposes

14  of trial, it includes -- I thought there was somewhere in here

15  where it said "which includes intercourse."  I don't see it

16  right now off the top of my head, though.

17     I think it's argument, and I think the issue is can

18  they -- can the jury believe the testimony of Tabitha and the

19  agents about what Mr. Gamez said was videotaped.  And I think

20  they can rely on that for the sexually explicit conduct.  So

21  I'm not sure there's a need for an additional instruction, I

22  guess is what I'm --

23            **MR. TRAVIS:**  I didn't have one to present, Your

24  Honor.  I realize it's going to go to the argument.  And you

25  asked the defense and prosecution to come up with whatever

1  other research we could have, and that's the best that I could

2  get to the Court this morning, in support of the motion asking

3  the Court to kick out Counts 1 and 2.

4          **THE COURT:**  The Court's going to deny the proffered

5  instruction.  I think it's covered in the Court's general

6  instruction when I speak of weight of the evidence.  I think it

7  is obviously the defendant's case here to argue to the jury the

8  credibility or believability of the prosecution witnesses,

9  especially in light of the fact that there are no visual

10  depictions that have been admitted into evidence.

11     The Court will not grant that instruction.  So the record

12  is clear, the Court is overruling the motion for acquittal on

13  Counts 1 and 2, as I did yesterday on 3 through 6.  So the case

14  will go to the jury on all counts.

15          **MR. TRAVIS:**  I think, for housekeeping, the only

16  other thing, Your Honor, defense has not rested yet.

17          **THE COURT:**  I'll let you do so in the presence of the

18  jury.  Mr. Gamez, I want you to stand for me just a moment.

19  You've had overnight to think about your case.  I just want to

20  inquire again of you this morning if you're still of the same

21  position that you desire not to be called as a witness and

22  testify?

23          **THE DEFENDANT:**  Yes, ma'am.  I'm with the same

24  decision as yesterday.

25          **THE COURT:**  Thank you, sir.

1         **THE DEFENDANT:** Yes, ma'am.

2         **THE COURT:** You've got, now, a complete set of the

3 cleaned up ones. Let's give everyone a copy of those.

4 Sometimes I shuffle those just a bit, so if you're following

5 along -- okay. I'm throwing away that set.

6    (AFTER OFF-THE-RECORD COMMENTS, THE PROCEEDING CONTINUED)

7         **THE COURT:** Okay. So this is a cleaned up set of

8 jury instructions. How much time do you need for closing? Has

9 that been discussed?

10         **MR. ROBERTS:** It has not, Your Honor. Twenty

11 minutes?

12         **MR. TRAVIS:** That's fine.

13         **MR. ROBERTS:** Ten and ten for me, with two-minute

14 warnings.

15         **THE COURT:** Okay. Mr. Moore, let them make that last

16 bathroom run. You can tell them we're about to bring them in.

17    (JURY IN AT 9:30 A.M.)

18         **THE COURT:** Good morning, ladies and gentlemen.

19         **THE JURY:** Morning.

20         **THE COURT:** Let the record reflect the jury has

21 returned to the courtroom this morning. Thank you for your

22 patience this morning. We are ready to start. You'll recall

23 yesterday afternoon, before I sent you home a little early,

24 that the prosecution had rested its case. Mr. Travis, will the

25 defendant be calling any witnesses?

1        **MR. TRAVIS:**  The defense rests, Your Honor.

2        **THE COURT:**  Thank you.  Ladies and gentlemen,

3    anticipating that, yesterday afternoon and this morning, we

4    have discussed jury instructions; and I'm prepared to read

5    those to you at this time.

6        Following the reading of the instructions, the attorneys

7    will make their closing arguments to you.  I'm going to read

8    these instructions aloud and ask that you listen very carefully

9    to the instructions.  I am telling you there's a lot of content

10   here, and you'll have a copy of these instructions with you as

11   you go to the jury room.

12       Members of the jury, in any jury trial, there are, in

13   effect, two judges.  I am one of the judges, though there is

14   the jury.  It is my duty to preside over the trial and decide

15   what evidence is proper for your consideration.  It is also my

16   duty, at the end of the trial, to explain to you the rules of

17   law that you must follow and apply in arriving at your verdict.

18       First, I'll give you some general instructions which apply

19   in every case, for example, instructions about the burden of

20   proof and about judging the believability of witnesses.  Then I

21   will give you some specific rules of law about this particular

22   case and, finally, explain to you the procedures that you'll

23   use in your deliberations.

24       You, as jurors, are the judges of the facts.  But in

25   determining what actually happened, that is, in reaching your

1  decision as to those facts, it is your sworn duty to follow all

2  the rules of law as I explain them to you. You have no right

3  to disregard or give special attention to any one instruction

4  or to question the wisdom or the correctness of any rule that I

5  state to you.

6      You must not substitute or follow your own notion or

7  opinion about what the law is or what it ought to be. It is

8  your duty to apply the law as I explain it to you regardless of

9  the consequences. It is also your duty to base your verdict

10  solely based upon the evidence without prejudice or sympathy.

11  That was the promise you made, and the oath that you took,

12  before being accepted by the parties as jurors. And the

13  parties have every right to expect nothing less.

14      The indictment, a formal charge against the defendant, is

15  not evidence of guilt. Indeed, the defendant is presumed to be

16  innocent. The law does not require a defendant to prove his

17  innocence. The law does not require the defendant to produce

18  any evidence at all. The Government has the burden of proving

19  the defendant guilty beyond a reasonable doubt; and if it fails

20  to do so, you must acquit the defendant.

21      While the Government's burden of proof is a strict, heavy

22  burden, it is not necessary that the defendant's guilt be

23  proven beyond all possible doubt. It is only required that the

24  Government's proof exclude any reasonable doubt concerning the

25  defendant's guilt.

1  A reasonable doubt, as defined in these instructions, is a

2  doubt based upon reason and common sense after careful

3  consideration of all the evidence in the case. Proof beyond a

4  reasonable doubt, therefore, is proof of such a convincing

5  character that you would be willing to rely on and to act upon

6  it without hesitation in your own affairs.

7  Now, as I told you earlier, it is your duty to determine

8  the facts. In doing so, you must consider only the evidence

9  presented during the trial, including, in this case, only sworn

10 evidence of the witnesses, as no exhibits have been introduced.

11 Remember that any statements, objections, or arguments

12 made by the lawyers are not evidence. The function of the

13 lawyers is to point out those things that are most significant

14 or most helpful to their side of the case and, in doing so, to

15 call your attention to certain facts or to certain inferences

16 that might otherwise escape your notice.

17 In the final analysis, however, it is your own

18 recollection and interpretation of the evidence that controls

19 the case. What the lawyers say is not evidence, and it is not

20 binding upon you. During the trial, I have sustained certain

21 objections to certain questions. You must disregard the

22 questions entirely. Do not speculate as to what the witness

23 would have said if permitted to answer the question. Your

24 verdict must be based solely on the legally admissible evidence

25 and testimony.

1     Also, do not assume from anything that I may have done or

2  said during the course of this trial that I have any opinion

3  regarding any of the issues in this case.  Except for the

4  instructions, you should disregard anything that I may have

5  said in arriving at your own findings of the facts.

6     While you should consider only the evidence, you are

7  permitted to draw such reasonable inferences from the testimony

8  that you feel are justified in the light of common experience.

9  In other words, you may make deductions and reach conclusions

10  that reason and commonsense lead you to draw from the facts

11  which have been established by the evidence.

12     In considering the evidence, you may make deductions and

13  reach conclusions, as I stated, which reason and common sense

14  lead you to make; and you should not be concerned about whether

15  or not it's direct or circumstantial evidence.  Direct evidence

16  is the testimony of one who asserts actual knowledge of the

17  fact, such as an eyewitness.  Circumstantial evidence is proof

18  of a chain of facts and circumstances indicating that the

19  defendant is either guilty or not guilty.

20     The law makes no distinction between the weight that you

21  may give to either direct or circumstantial evidence.  I remind

22  you that it is your job to decide whether or not the Government

23  has proven the defendant guilty beyond a reasonable doubt.  In

24  doing so, you must consider all of the evidence.  This does not

25  mean, however, that you must accept it all as true.

1      You are the sole judges of the credibility or

2  believability of each witness and the weight to be given to

3  that witness's testimony.  A very important part of your job is

4  to make judgments about the testimony of the witnesses who have

5  testified in this case.  You should decide whether you believe

6  all or any part of what each person had to say.  And you shall

7  decide how important that testimony was.

8      In making that decision, I suggest that you ask yourself a

9  few questions.  For example, did the person, the witness,

10  impress you as honest?  Did the witness have any particular

11  reason not to tell the truth?  Did the witness have a personal

12  interest in the outcome of the case?  Did the witness have any

13  relationship with either the Government or the defense?

14      Did the witness seem to have a good memory?  Did the

15  witness clearly see or hear the things about which he or she

16  testified?  Did the witness have the opportunity and the

17  ability to understand the questions clearly and answer them

18  directly?  Did the witness's testimony differ from the

19  testimony of other witnesses?

20      These are just a few of the examples of types of questions

21  and considerations that will help you determine the accuracy

22  and truth of what each witness has said.  Your job is to think

23  about the testimony of each witness you have heard and decide

24  how much of what each witness had to say that you believe.

25      In making up your mind and in reaching a verdict, do not

1  make any decisions simply because there were more witnesses on

2  one side than the other side.  Do not reach a conclusion on a

3  particular point just because there were more witnesses

4  testifying to that point.

5      If the defendant is found guilty, it will be my duty to

6  decide what punishment should be.  You should not be concerned

7  with punishment in any way.  It should not even enter your

8  considerations or your discussions in the jury room.

9      You will also note that the indictment charges that the

10  offense was committed on or about a specific date.  The

11  Government does not have to prove that the crime was committed

12  on that exact date as long as the Government proves, beyond a

13  reasonable doubt, that the defendant committed the crime on a

14  date reasonably near the date stated in the indictment.

15      To reach a verdict in this case, whether guilty or not

16  guilty, all of you must agree.  Your verdict must be unanimous

17  on each count of the indictment.  Your deliberations shall be

18  in secret.

19      Now, the defendant in this case is charged in Counts 1 and

20  2 with using a minor to create pornography in violation of

21  Title 18, United States Code, Section 2251(a) and 2256(a)(e).

22  Section 2251 makes it a violation to produce child pornography.

23      For you to find the defendant guilty of this crime, you

24  must be convinced that the Government has proven each of the

25  following essential elements beyond a reasonable doubt as to

1  each count:  First, with respect to Counts 1 and 2, the first

2  element is the defendant employed or used or coerced a minor to

3  take part in sexually explicit conduct for the purpose of

4  producing visual depictions, in this case, digital images of

5  such conduct.

6      The second element, at the time that the depictions were

7  made, the victim was under the age of 18 years.  And the third

8  element, the visual depiction was produced using materials that

9  had been mailed, shipped or transported across state lines or

10  in foreign commerce.

11      The Court instructs you that it is not necessary for the

12  Government to prove that producing visual depictions was the

13  sole or even dominant purpose of the minor being employed or

14  used or coerced to take part in sexually explicit conduct.  It

15  is enough if the evidence shows that producing visual

16  depictions of that activity was one of the defendant's dominant

17  purposes.

18      In this case, the defendant is also charged in Counts 3

19  through 6 with knowingly transporting a minor across state

20  lines with the intent to engage in illicit sexual activity.

21  It's a federal crime to transport an individual under 18 years

22  of age in interstate or foreign commerce with the intent that

23  that individual engage in sexual activity for which any person

24  may be charged with a criminal offense.

25      In other words, for the defendant in this case to be found

1  guilty of each of Counts 3 through 6, then the following

2  elements must be proved beyond a reasonable doubt as to each of

3  those counts:  There are three elements.  The first element,

4  the defendant knowingly transported the person named in the

5  count of the indictment, knowingly transported that person in

6  interstate commerce.

7       Second, that at the time of the transportation the person

8  named in the indictment was less than 18 years of age.  And the

9  third element is, at the time of the transportation, defendant

10  intended that person would engage in sexual activity for which

11  the defendant could be charged with a crime.  It is not

12  necessary for the Government to prove anyone actually engaged

13  in illegal sexual activity after being transported across state

14  lines.

15       The Government must prove beyond a reasonable doubt that a

16  person under 18 years old was knowingly transported across

17  state lines by the defendant; and that the defendant intended,

18  at the time, for the person under 18 to engage in either

19  prostitution or other illegal sexual activity.  The Government

20  must prove that if the intended sexual activity had occurred

21  the defendant could have been charged with a criminal offense

22  under the laws of the state of Tennessee.

23       The Court instructs you that under Tennessee state law,

24  Tennessee Code Section 39-13-506(b), engaging in sexual

25  intercourse with a minor is the crime of statutory rape if the

minor is less than 15 years of age and if the defendant is at least four years older than the minor.

The term *to transport in interstate commerce* means to move or carry someone or call someone to be moved or carried from one state to another state. Interstate commerce means commerce or travel between one state, territory, or possession of the United States and another state, territory or possession of the United States, including the district of Columbia. Foreign commerce means travel or commerce between any part of the United States and any other country.

For the purposes of this trial, the following terms have the following definitions and meanings: The term *minor* means any person under the age of 18 years. The term *sexually explicit conduct* means lascivious exhibition of the genitals or pubic area. And No. 3, *visual depiction* includes data stored on a cellular telephone, computer disk or by any other electronic means which is capable of conversion by a computer program or other method to a visual image.

The testimony of someone who is shown to have used addictive drugs during the period of time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

1    In determining whether any statement claimed to have been

2 made by the defendant outside of this courtroom and after an

3 alleged crime has been committed -- to determine if that

4 statement was knowingly and voluntarily made, you should

5 consider the evidence concerning such a statement with caution

6 and great care.  And you should give such weight to the

7 statement as you feel it deserves under all of the

8 circumstances.

9    You may consider, in that regard, such factors as age,

10 sex, training, education, occupation, physical and mental

11 condition of the defendant, his treatment while he was being

12 interrogated, and all the other circumstances in evidence

13 surrounding the making of that statement.

14    Ladies and gentlemen, I remind you that a separate crime

15 is charged in each count of the indictment.  There's a total of

16 six counts.  Each count and the evidence pertaining to it must

17 be considered separately.  The fact that you may find the

18 defendant guilty or not guilt as to one of the crimes charged

19 should not control your verdict as to any other charge.

20    It is your duty to consult with one another and to

21 deliberate in an effort to reach agreement if you can do so.

22 Each of you must decide the case first for yourself but only

23 after -- must decide the case for yourself but only after an

24 impartial consideration of the evidence with your fellow

25 jurors.

1    During your deliberations, do not hesitate to reexamine

2 your own opinions and change your mind if convinced you are

3 wrong.  But do not give up your honest beliefs as to the weight

4 or the effect of the evidence solely because of the opinion of

5 your fellow jurors or for the mere purpose of returning a

6 verdict.

7    I want you to remember at all times that you are judges;

8 you are judges of the facts.  Your sole duty is to decide

9 whether the Government has proven the defendant guilty beyond a

10 reasonable doubt.  When you go to the jury room, the first

11 thing I'd ask you to do is to select from among yourselves a

12 foreperson.  That foreperson will be the person responsible for

13 communicating with the Court and will speak for you when you

14 return to the courtroom with your verdict.

15    The Court has prepared a form of the verdict that I'll

16 discuss with you in just a moment.  It's been prepared for your

17 convenience.  The foreperson will write the unanimous answer --

18 remember that I said your verdict must be unanimous as to each

19 count.

20    The foreperson will write the unanimous answer of the jury

21 in the space provided by each count, being either guilty or not

22 guilty.  At the conclusion of your deliberations, the

23 foreperson will also sign and date that verdict form.

24    Now, during the period that you're deliberating, if you

25 need to communicate with the Court at any time about any

1  matter, the foreperson will write the message, give it to the

2  security officer, who will deliver it to me.  Again, I remind

3  you, during your deliberations, you must not communicate with

4  anyone or provide any information to anyone by any means about

5  this case.

6       You must not use any electronic devices or media, such as

7  telephone, cell phone, smart phone, iPad, all those many

8  electronic devices.  You must not use them to communicate with

9  anyone or to secure additional information about this case or

10 to conduct any research about the case.

11      Bear in mind, as you deliberate, you should never reveal

12 to any person, not even to me, how the jury stands numerically

13 or otherwise on any count until you have reached a unanimous

14 verdict.  So do not speak to the security officer or anyone

15 else about any split that you may have in your deliberations.

16      Now, at this time, the attorneys are going to make closing

17 arguments to you.  I suggest that you listen very carefully.

18 At the conclusion, I'll send you to the jury room with some

19 further instructions.  You'll have these jury instructions I've

20 just read to you as well as you will have a copy of the

21 indictment.

22      And I want to speak to you just a moment about the verdict

23 form -- that I threw away.  The verdict form reads, with the

24 style of this case "we the jury find the defendant as follows."

25 And it lists Count 1 and a blank, Count 2 and a blank.  This

1  exercise forces you to deal with each count.

2      And then you are instructed that you are to place the word

3  *guilty* or *not guilty* out beside, in the blank, of each count.

4  It provides for a space where the foreperson will sign and a

5  space where the verdict form will be dated.

6      Mr. Roberts, you may make closing argument to the jury.

7          **MR. ROBERTS:**  Thank you, Your Honor, opposing

8  counsel.  Before we had this big thing here, you'd stand in the

9  middle; but I'm sort of looking down at -- or looking out at

10  y'all.

11      The Court's done a very thorough job of explaining the

12  instructions to you.  I have a copy of the indictment; and

13  you'll see, basically, there are two types of charges.  Counts

14  1 and 2 are using a minor, Tabitha Griffin, to engage in

15  sexually explicit conduct for the purpose of creating a visual

16  depiction of that creation of child pornography alleged to have

17  happened on June 1st and July 1st.  As you're aware from the

18  testimony, we don't have those exact dates.  We're getting as

19  narrow as we can from what Tabitha has been able to remember

20  and tell us.

21      The second type of charge is to travel across interstate

22  lines to engage in sexually explicit conduct, which is illegal;

23  in this case, statutory rape.  And you heard those, and those

24  are dated June 1st, July 1st, August 1st, November 1st.  We

25  know that this ended in November.

1       We know the interview of Tabitha happened in November, and

2  the interview from the FBI agents of Mr. Gamez happened

3  November 18th.  So we've got sort of a time bound.  And we know

4  that the sex happened more often, the travel to Memphis

5  happened more often.  Tabitha's testimony was that it happened

6  almost every day throughout the week, but we charged four

7  dates.  I think that gives you a pretty good idea of what's

8  going on and gives you a chance to evaluate and hear the

9  testimony.

10      Now, you've heard a number of witnesses in the case.  Not

11 as many as most cases and we don't have a lot of physical

12 exhibits; we don't have any, as a matter of fact.  But we have

13 the testimony.  And the Court told you that your verdict is to

14 be based on your judging of the testimony from the witnesses.

15 That's your job.  And we appreciate that.  That's -- your job

16 is to decide what is true, what happened and how to apply that

17 to the law that the Court just explained to you.

18      You heard Tabitha; and you got to see Tabitha, a

19 15-year-old girl now, 14 last summer when all this happened;

20 and her testimony about how she first met Mr. Gamez when she

21 was nine years old.  She's now 14 last summer, last June.  And

22 they started dating.  And it progressed pretty quickly.  And

23 they engaged in this sexual intercourse at her father's and at

24 his father's house in Desoto County and at his apartment up in

25 Memphis, and how she would sneak out of the house.

1    You heard from Patches Griffin, her mother; and the

2  testimony about how she was trying to do everything she could

3  to stop it.  When she realized what was going on, she did

4  everything she could.  She went to the police.  The police were

5  of no assistance; they couldn't help unless they had something

6  physical.

7    And then you heard from the agents, Agent Arton and Agent

8  Bohlke, about interviewing Mr. Gamez and how he initially said,

9  "Look, I didn't have sex with her.  That didn't happen.  You

10  know, I was trying to get back with my girlfriend.  We kissed

11  once or twice, but that was it."

12    And they said, "Listen, Tabitha told us what happened."

13  And he told them what happened; and he was truthful, yes, we

14  started having sex; yes, it happened at my father's house; yes,

15  I took her to Memphis; yes, we had sex a number of times.

16    Now, there's a little bit of a twist.  Tabitha said, "I

17  didn't want pictures of me taken; and I certainly didn't want

18  them taken on my phone because my grandmother goes through the

19  phone"; and him saying, "Well, it was her idea."

20    But for the crimes that happened, this is not a classic

21  he-said-she-said dispute.  This is a he-said-she-said

22  agreement.  They had sex; they traveled to Memphis to have sex.

23  There were recordings -- visual recordings of that sex.  You

24  heard Tabitha describe it and say, "I deleted it because I knew

25  what would happen if I took it home and my grandmother found it

1  or my mother found it."

2  Now, let me talk about the jury instructions. The

3  Court -- you'll have copies of these, and all of them are

4  important. And I would -- the Court also told you -- I'd

5  pretty quickly point out to you -- I always hate going to hear

6  a speech where the person says, "Look, I haven't had a lot of

7  time to prepare; and what I say is not going to be really

8  important."

9  Because at that point, I sort of turn off and say, Okay.

10 Well, if they didn't have a lot of time to prepare and what

11 they say isn't really important, then I don't have to listen.

12 But what lawyers say is important. We're prepared. But it's

13 not evidence in this case. Okay?

14 And it's not our recollection of what happened and our

15 argument about what happened that actually is what you are to

16 decide. You are to decide what happened from the testimony.

17 And I think you'll find -- I've never served on a jury and

18 probably will never get to serve on a jury.

19 But what I've been able to understand from people who tell

20 me about it is you'll go back and you'll be able to remember

21 things greater as a group than individually. So if you have a

22 question about something or a thought about something, shoot it

23 out to the other members of the jury. And you'll be able to

24 recall things better together than you would individually.

25 You consider all the evidence presented during the trial.

1  Statements, objections, arguments are not evidence.  But we are

2  to point out that it's your recollection about what it is

3  that's important in the case.  I want to point that out to you.

4  And all of those instructions are important, but I want to just

5  highlight a couple and talk about a couple very quickly.

6      The Court told you about the elements.  These are the

7  elements, use of a minor to engage in sexually explicit

8  conduct, sexual intercourse, the exhibition of the genitalia.

9  And, you know, you can imagine.  We don't have the images

10  because Tabitha deleted them.  Think about that a little bit.

11      Thank goodness she was able to delete them.  Hopefully,

12  she got them deleted.  We live in an age where from a cell

13  phone, from an iPhone or a BlackBerry, you can take those

14  pictures and immediately post them to Facebook.  And once

15  they're on Facebook or Twitter, they're gone.  You can never

16  get them back.  And that's part of the reason that this is

17  illegal, because you can't get those back.

18      Use the minor for engaging in sexually explicit conduct,

19  if the victim was under 18.  You've heard the testimony that

20  Ms. Griffin was born May 9th, 1997; so she was 14 when this

21  happened, 15 today.  Mr. Gamez told the agents and his birthday

22  is March 7, 1989, 22 at the time this occurred, 23 now.

23      Visual depiction was produced using materials that had

24  been mailed, shipped or transported across state lines.  This

25  is pretty easy to think about the last two elements.  She

1  under -- she's 14 years old; the camera -- the cell phone that

2  was used was transported from Mississippi to Memphis.  It goes

3  across the state line.  That's what was used to produce these

4  images.  And again, thank goodness Tabitha was able to get them

5  and, hopefully, delete them all.

6      This is also important; I'd venture to say that the main

7  purpose in engaging in sex was not necessarily to take

8  pictures.  The main purpose that Mr. Gamez was engaging in sex

9  was to engage in sex.  But having that image and having that

10  recollection and having that is a secondary purpose; so it's

11  still a purpose, still a primary purpose, but not the main

12  purpose.

13      And the Court instructed you it doesn't have to be the

14  main purpose.  He doesn't have to be engaging in sex just to

15  make the videos.  Because I think it's pretty realistic to

16  understand that he was engaging in sex to engage in sex, and

17  the picture were just a secondary part to that.

18      As to the -- Counts 3 through 6, the elements -- and like

19  I said, y'all will have these back there; but I think it's

20  important to have them reinforced.  Transported across the

21  state line.  Tabitha's testimony, four or five days a week, all

22  that summer, from June until the end in November.  Less than 18

23  years of age.  Again, we talked about that.

24      And again, the Court has instructed you that Tennessee

25  statutory rape is a pretty simple set of elements, engaging in

1  sexual intercourse with a minor is a crime of statutory rape if

2  the minor is less than 15. She was 14. And the defendant is

3  at least four years older. He's six years older than her. So

4  those elements are met and happened in Tennessee, so that would

5  be a crime under the state law.

6      Let's talk about this a little bit. I asked Tabitha, and

7  she was forthright about it. She was smoking what she called

8  *weed*, marijuana. She was taking drugs and drinking alcohol

9  when this happened. And she said it was -- they were supplied

10 to her by Mr. Gamez.

11     She also testified that she is taking some drugs right

12 now, including Abilify; but that it did not affect her ability

13 to recall. She didn't have any memory lapses. And her mother

14 testified to the same thing. But obviously, a person who is

15 using illicit drugs, or even legal drugs, is something that you

16 need to think about and consider in your evaluation of

17 credibility. It doesn't destroy credibility, the instruction

18 says; but you need to look at it a little more carefully than

19 any other witness. So the Court's instructed you on that.

20     And also -- and we'll talk about this for a few seconds.

21 The statement given by Mr. Gamez, this is something that I

22 anticipate -- and I don't know what Mr. Travis will argue, but

23 I anticipate this is going to be a main part of his argument.

24 But what was said and the manner it was said.

25     Both Mr. Arton and Mr. Bohlke testified about the fact

1    that it happened at his work. They waited about 30 minutes for

2    him to come to work -- come back to work. It happened in a

3    room. He was free to leave. He was never under arrest. At

4    the end of the interview, he walked away; he was not under

5    arrest.

6         Appeared to be able to answer their questions. Didn't

7    have any difficulty answering their questions. Was treated

8    respectably by the FBI agents. And gave a statement which,

9    basically -- and like I said, it's not a he-said-she-said

10   difference; it's a he-said-she-said same thing happened.

11        Again, they traveled to Memphis and had sex. They had sex

12   at his father's home in Mississippi. They took -- and the

13   agent testified that he said on two occasions that he

14   videotaped them engaging in sexual activity.

15        **THE COURTROOM DEPUTY:** Two minutes.

16        **MR. ROBERTS:** Two minutes? So as you look at that

17   and think about the circumstances and think about the testimony

18   given by the agents, I think we're going to hear a little bit

19   about the agents. Ask yourselves and think about a couple of

20   things, the motivation to lie and the motivation to fabricate

21   or lie about what happened. Okay?

22        Now, there's been no evidence of any motivation or any

23   reason for Agent Arton or Agent Bohlke to fabricate what

24   happened or what Mr. Gamez said. It wouldn't make any sense

25   for them to. There's no evidence of why they would do it.

1  Think about, also, the motivation to fabricate and lie on

2  behalf of Tabitha.

3     Now, I have a 14 year-old.  She's a good girl.  She

4  doesn't lie very much.  But when a child lies -- and those of

5  you who have children and grandchildren know -- when they lie,

6  what are they trying to do?  They're trying to avoid problems.

7     And the issue becomes, if Tabitha is lying and making all

8  this up, which is not corroborated by anything in the case,

9  including the confession, the admission, by Mr. Gamez, what is

10  she lying and doing to herself?  She's not avoiding trouble by

11  telling this story.  She's getting herself into more and more

12  trouble as she tells this story.

13     And you can see, as a consequence, the treatment and the

14  drugs that she's taking now for -- she described it as

15  post-traumatic stress disorder.  But that lie is not something

16  that's getting her out of trouble.  So you can see that her

17  motivation to lie is not of the type that would cause her to

18  lie under these circumstances.  And what she said did happen .

19     You heard Patches.  And maybe that's the most telling

20  thing.  She -- you know, she's not going to win any

21  mother-of-the-year award.  Let's just be frank.  But she's

22  doing the best she can.  She's talking to the police and trying

23  to get them to do something, and she's seeing this daughter

24  descend and descend and descend, as a result of a person that

25  was in her home that she knew.

1      She was babysitting the children of this man.  And that

2  daughter was being taken advantage of by him.  And anything she

3  could do to help, she was trying to do.  But she did it the

4  right way.  She went to the police; she went to the FBI.  The

5  evidence in this case, the testimony of Tabitha, the testimony

6  of the agents about the statement of Mr. Gamez shows that all

7  six of these statutes, all six of these charges, have been

8  committed by the defendant; and the verdict in the case should

9  be guilty on all six counts.  Thank you.

10          **THE COURT:**  Thank you, Mr. Roberts.

11      Mr. Travis.

12          **MR. TRAVIS:**  Thank you, Your Honor.  Please the

13  Court.  Morning, ladies and gentlemen.

14          **THE JURY:**  Morning.

15          **MR. TRAVIS:**  Ladies and gentlemen, I only get one

16  opportunity to speak to you in closing argument.  And I've been

17  given 20 minutes to do so.  I don't know that I'll take the

18  entire 20 minutes.  But the prosecution has the right to come

19  behind me and speak to you again.  So this is the only occasion

20  I will have to speak to you in my closing argument on behalf of

21  Lino in regards to what your judgment may be on this case.

22          The first thing that -- and if you'll forgive me, I'm not

23  used to be being strapped with all this furniture; I like to

24  move around.  But that's how we do it here; and I can't stand

25  up on top of the table, so.

1      **THE COURT:** I'll let you, Mr. Travis.

2      **MR. TRAVIS:** Well -- I know. Thank you, Your Honor.

3      On this case, ladies and gentlemen, the -- one of the

4  things that has bothered me -- and I think you would agree; I

5  think everyone in this courtroom would agree -- is that, you

6  know, where is society leading us every day in our lives right

7  now as we sit here today in 2012 when society is -- it's a

8  garbage pit coming out of Hollywood.

9      It's a garbage pit coming out of the media, coming out of

10  the news every day, not only the -- and I'm relating that to

11  the young people in our society. And I have three children.

12  I've had two daughters and son, 14 years old; and I know what

13  that's like. And we all fight that battle.

14      But the garbage that's coming into society through the

15  television set, movies, the media, the music, everything, the

16  toxicity of it and the garbage of it that makes young people --

17  and I have fought this battle -- but I mean, makes young

18  people -- someone like Tabitha want to be something before

19  their time.

20      We live in a society that bombards our young minds out

21  there to want to be a woman before their time. In some

22  circles, they're almost embarrassed to say that they haven't

23  matured into that. So they're doing everything in their power

24  to look the part and, ultimately, to be the part, well before

25  that should even take place in their lives.

1    Now, society is not on trial here today.  Am I right about

2 that?  But Lino is.  And this is one of those cases to where

3 you just wonder if the world out there did not teach our young

4 people to try to be something before their time, such as

5 Tabitha.

6    You had an opportunity to observe her.  You saw her

7 appearance.  She's not your typical baby-faced 14 or 15

8 year-old.  She testifies that she likes to wear the jewelry on

9 her eyebrow or her lip and has tattoos.  I'm not attacking

10 tattoos, but I'm just saying that culture and society

11 encourages that.  They push them too far too soon.

12    And the planets line up.  Maybe I should write a book

13 about this some day.  The planets line up to get people in

14 trouble, to get people in trouble.  And it's my understanding

15 from the proof that the idea was hers initially to get involved

16 with Lino.  So the planets are lined up.

17    And the question that you've got to decide here this

18 morning on these charges is whether or not once that snowball

19 starts rolling, somebody's in trouble.  Lino's in a lot of

20 trouble here.  Stand up Lino.  Sit down, son.  Because we've

21 been in here talking about him and what may happen to him for

22 the last two days.  But once the ball starts rolling, and maybe

23 some things happen -- and they're alleged in this case.

24    The prosecution has not stolen my thunder.  On this case,

25 I am asking you, on Counts 1 and 2, to acquit Lino Gamez.  The

1  Court has instructed you to go slowly and individually, in your

2  own mind, individually, each and every one of you as to what

3  you think about each and every count of this indictment.

4      And I'm saying to you, ladies and gentlemen, that on

5  Counts 1 and 2 what you don't have is the evidence necessary,

6  trustworthy enough, credible enough to allow you to convict

7  Lino on Counts 1 and 2.

8      There are not any photographs that have been presented to

9  you.  There are no images on cell phones presented to you.  You

10 don't know exactly what any sexually explicit depictions were

11 really available here to allow you to determine beyond a

12 reasonable doubt whether or not Lino has violated Counts 1 and

13 2 or the law in those two counts.

14     It simply is not available to you, and you're left with

15 the vague testimony of Tabitha.  And Mr. Roberts, who's a very

16 capable prosecutor, got as much out of her as he could; but it

17 did not get you within the realm of what the instructions that

18 the Court has given you, to depict, necessarily, exactly what

19 may or may not have been seen to prove beyond a reasonable

20 doubt that Lino is guilty of Counts 1 and 2.

21     You're not allowed to look at any visual images and

22 determine the quality of it, the nature of it, to look for

23 yourself to see if, under the guidelines of the instructions

24 given to you by the Court, whether there are any photographs of

25 genitalia or the pubic area or exactly what may or may not have

1  gone on in this relationship.

2      Where is the evidence to support that?  The prosecutor

3  wants you to think it's just the evidence of Tabitha and what

4  she said, a relationship.  But whether or not Counts 1 and 2

5  should be found guilty, I would say to you this morning that

6  you can walk tall out of here by unanimously voting, or

7  individually, that you don't believe the proof has reached the

8  level beyond a reasonable doubt on Counts 1 and 2 of this

9  charge.

10      It's just not there.  You owe no one an apology for voting

11  not guilty on that.  Photos of what?  Testimony?  Vague.

12  Credibility.  This is a, for lack of a better word -- I don't

13  know if it's a classic Romeo and Juliette; but basically,

14  they've established that there was a relationship here.

15  There's been no medical testimony to prove in fact that she has

16  actually lost her virginity.

17      But you've heard the proof.  You've got a lot to think

18  about.  In the interview with Mr. Lino in November of '11,

19  we've made the point that there was only one interview, only

20  one.  They don't have to have more than one, but it's often the

21  practice that various agencies will have more than one or two.

22  I've been involved in those with clients.

23      But that's all there was on this, is one time, one

24  interview, under circumstances that Mr. Gamez had found himself

25  under for the first time in his life.  There's been no evidence

1  that this young man, this baby-faced 22-year-old at the time,

2  has been the -- what they're trying to prove, has been in the

3  business of taking young children at ages that are not allowed

4  under the law and taking them across state lines with any

5  elaborate or sophisticated equipment so they can make movies of

6  people having sex and transport that over so they can make

7  money.

8      He's not in the business of that.  There was a

9  relationship here, and it was two people.  And again, as I

10 understood the proof, she's the one who got the ball rolling.

11 I would submit to you, with all due respect, the FBI -- that

12 they have the capacity to give you more than what they've given

13 you as far as a video or an audio -- which, it's done; and we

14 all know it; use your commonsense -- to let you see exactly

15 what was said and how it was said and understand the situation

16 between Mr. Gamez and Tabitha.

17      The proof does not show beyond a reasonable doubt, ladies

18 and gentlemen, that there was a coercion here; that some --

19 this is not a 40 year-old man who's going out there trying to

20 coerce young ladies across state lines so he can be in the

21 business of making movies, mailing them, shipping them.

22          **MR. ROBERTS:**  Your Honor, I apologize, object to

23 relevance.  That's not the charges in this case.

24          **MR. TRAVIS:**  I'm in closing argument, Your Honor.

25          **THE COURT:**  It's overruled.

1          **MR. TRAVIS:**  Thank you very much, Your Honor.  No

2  evidence whatsoever that that's the game this young man is in.

3  This is a young man.  This game on these Counts 1 and 2 are for

4  the older guys who want to go out there and reel in the

5  children --

6          **MR. ROBERTS:**  Your Honor, again, this is not the

7  charges.

8          **THE COURT:**  That comment is sustained and ask the

9  jury to disregard the last comment.  You may proceed.

10          **MR. TRAVIS:**  Thank you.  That's not what's going on.

11  The sexually explicit conduct that you're instructed to think

12  about, again, means the lascivious exhibition of genitals of a

13  pubic area, a visual depiction.  You have nothing.  You just

14  don't have it.  It's not in this courtroom.  It's not in

15  evidence.  Each and every count, ladies and gentlemen, the

16  Court will tell you to take and consider in your own mind,

17  individually and with great care to examine and reexamine your

18  own opinions.

19      Again, ultimately, on this case, Counts 3 through 6,

20  another thing that wasn't done to followup on this case, that

21  closes the door to that information, is that no medical exam or

22  rape kit or anything was done to actually hand you medical or

23  expert testimony as to the condition of the young lady, whether

24  or not in fact you're left with an interview of Mr. Gamez.

25      Without benefit of audio or video, you're left with the

1 vagueness and the believability or not believability of this

2 young lady who initiated this. And I would leave you with

3 this, ladies and gentlemen, that you can take that testimony

4 and the lack the thereof, think about it individually, stand

5 your own ground; and we're asking you for a verdict of not

6 guilty on behalf of Lino. Thank you.

7           **THE COURT:** Thank you.

8    Mr. Roberts.

9           **MR. ROBERTS:** Thank you, Your Honor. I guess it's

10 only traditional for the older generation to condemn the

11 younger generation in some ways, the music's horrible and the

12 dancing's horrible, and whatever it is. You know, my parents

13 did it to me; my grandparents did it to my parents; and I do it

14 to my kids.

15    The question of where is society leading us, you know, I

16 don't have any answers. And we're not going to solve society's

17 problems today. But I do think of an example. It's not quite

18 a great, pure example but somewhat applicable. Joseph, son of

19 Abraham -- not Abraham, son of Israel, is sold by his brothers

20 into Egypt and becomes king of everything that's over -- that

21 Potifar owns.

22    In the 39th chapter of Genesis, Potifar's wife comes onto

23 the scene. I think it's Verse 9 -- I may be wrong -- that

24 Joseph is confronted with Potifar's wife. And he asks the

25 question, Of everything of my master's except his wife, how can

1  I do this great evil?  And what does the adult do, Joseph?  He

2  runs.  Damn the consequences.  He runs away; Potifar's wife

3  clinging onto the cloak.  And he's imprisoned.

4      What is the adult to do?  What does society require the

5  adult to do?  When confronted with a 14 year-old that he's

6  known since he was -- she was nine, what is the adult -- what

7  does society require the adult to do?  To run and not engage in

8  this.

9      That's what the law -- that's the law that the Court

10  instructed you.  That's what society has decided.  Now, say we

11  run a rape kit, take Tabitha to the nurse, have this invasive

12  procedure, and they determine that she's had sex, and say

13  they're even lucky enough to find sperm or DNA from Mr. Gamez,

14  this invasive procedure on this young woman, what does that

15  extra test show you in this case, that he's suggesting that the

16  FBI could have and should have done?  That they had sex.

17      What did Tabitha testify that happened?  They had sex.

18  What did Mr. Gamez tell the FBI agents?  That they had sex.  So

19  is there a need for an extra invasive procedure to show what

20  everyone admits happened happened?  There's no reason for that.

21  It doesn't prove anything.

22      The interview notes and the testimony of the agents is

23  another method of recording and memorializing the interview of

24  Mr. Gamez.  Is there any indication, other than Mr. Travis's

25  protestations, that what Mr. Gamez told the agents isn't

1  precisely what they came in and testified to, about what he

2  told you?  Is it corroborated by the testimony of Tabitha?

3      It's not their policy to record, audiotape or videotape

4  the things.  And I tell you, basically, what happens when we do

5  that is when you put a videocamera or a -- I guess we don't use

6  cassettes anymore.  I'm showing my age.

7      I guess what you do is you put the little recorder that

8  makes MPD -- MT -- MP3 file, I guess is what it's called.  When

9  you put that on the table and you put the videocamera, it

10 changes the way people talk.

11     When you write and you jot down notes and things -- and

12 they memorialize it almost immediately thereafter -- they're

13 able to get a full and flowing conversation from Mr. Gamez.

14 And that's what happened in this case.

15     Let me close with this.  I'm not sure how long I've got,

16 I'm going to give -- it's not much, but I'll give a little bit

17 of time back to you.  And just ask this question, sort of

18 society -- we're not going to solve society's problems today.

19 We're not hear to solve society's problems today.

20     But we're here to look at this law, look at these facts

21 and determine if the defendant's guilty.  Basically, the

22 argument of Mr. Travis is that Tabitha doesn't deserve your

23 protection.  Because of her upbringing, because of her family,

24 because of her tattoos, because of her ear piercings, she

25 doesn't deserve your protection.

1    If that's true, we live in a sad state. She doesn't

2 deserve your protection, even from herself in some instances?

3 If she doesn't deserve adults acting like adults around her

4 and, when the opportunity arises, not a, "What am I suppose to

5 do; she wanted sex -- that's not the proper response that we

6 need in this society.

7    If you condone Mr. Gamez's response, the actions he took

8 taking her across the state line, the actions he took recording

9 them engaged in sex -- if that's not sexual activity -- if sex

10 is not sexual activity, I'm not sure what is.

11    **THE COURTROOM DEPUTY:**  Two minutes.

12    **MR. ROBERTS:**  If you decide that she doesn't deserve

13 your protection, our protection, like I said, that is sad. And

14 also, unfortunately, it would be an abrogation of your duty to

15 follow the law and listen to the evidence.

16    Because as you do that, as you apply the law and the

17 evidence, and the evidence to the law, the evidence is clear

18 that he criminally took images of them engaging in sex,

19 criminally traveled across state lines to engage in sex, which

20 would be statutory rape under the law of Tennessee. And he's

21 violated each and every one of these charges and deserves to be

22 found guilty on each and every one of them. Thank you, Your

23 Honor.

24    **THE COURT:**  Thank you.

25    Ladies and gentlemen, I am about to send you to the jury

1  room.  Before I do so, I have two jurors, two alternates, that

2  I need to thank and excuse.  Ms. Hanna, you and Mr. Allen have

3  served as the alternates, Alternates 1 and 2; and I'm excusing

4  you at this time.

5      Always in criminal cases, we have alternates so in the

6  event something were to happen during the course of the trial

7  that we can call you in; you can go to the jury room just as

8  any other juror could and be able to complete the case.  So

9  your job is very important.  Your duties are very important.

10  And we thank you for being with us these two days to fulfill

11  those duties.

12      With respect to what you do from now, you will not go to

13  the jury room with the jury; but you're welcome to wait here

14  for the verdict.  You're welcome to give you cell phone number

15  to Ms. Ginger if you want to be advised of the verdict later or

16  call the office.  But truthfully, your service is very

17  valuable; and we thank you for that.

18      Ladies and gentlemen, I am about to send you to the jury

19  room to start your deliberations.  I know that a couple of

20  people -- maybe one left with us needs -- may need to go

21  outside to smoke before you start.  My point is this, go to the

22  rest room, get something to eat, get your snack, get your

23  water, get your sodas.

24      Don't sit down and start deliberating this case until all

25  12 of you are at this table.  Once all 12 of you are there, as

1    I instructed you earlier, select from among yourselves a

2    foreperson.  And by the time you get ready to do that,

3    Ms. Ginger will have brought you the instructions and a copy of

4    the indictment in this case.

5        Let me speak to you about time.  There is no time

6    limitation on you.  You take whatever time you feel is

7    appropriate for full and complete deliberations.  We'll check

8    with you around the noon hour, if you're still deliberating,

9    with respect to lunch.  Otherwise, the day is yours; and you

10   take it as necessary to deliberate this case.

11       You have a verdict form.  Once you have reached a

12   unanimous verdict of guilty or not guilty as to each count,

13   your foreperson will fill out that form, sign it, date it,

14   knock on the door, advise the security officer that you've

15   finished your task; and I'll bring you back in the courtroom

16   for delivery of that verdict just as quickly as I can round up

17   the attorneys and the parties and get them back in here.

18       With that, you are excused in order to start your

19   deliberations.  Thank you.

20       (JURY OUT AT 10:30 A.M.)

21           **THE COURT:**  Ms. Hanna, Mr. Allen, do y'all have some

22   items in the jury room that you need to retrieve before you

23   leave?

24           **THE ALTERNATES:**  No.

25           **THE COURT:**  Okay.  You are free to exit front door,

1  back door; it does not matter.  But if you have items in the

2  jury room, I want you to be able to go back and get those.

3          **THE ALTERNATES:**  (Shaking heads negatively.)

4          **THE COURT:**  Thank you for your service.

5      Counselor, we will be in recess until we receive a

6  verdict.  If you wish to step outside the courthouse, if you

7  would leave your cell number with Ms. Ginger.

8      (AFTER JURY DELIBERATIONS, THE PROCEEDING CONTINUED).

9      (JURY IN AT 11:30 A.M.)

10          **THE COURT:**  Thank you.  Let the record reflect that

11  the jury has returned to the courtroom.  Ladies and gentlemen,

12  have you reached a verdict?

13          **THE FOREPERSON:**  We have, Your Honor.

14          **THE COURT:**  And who is the foreperson?

15          **THE FOREPERSON:**  I am.

16          **THE COURT:**  Thank you.  Would you pass the verdict

17  form to Mr. Morris.  Ladies and gentlemen, as to each count,

18  the jury has indicated whether or not the defendant is guilty

19  or not guilty.  I shall read the verdict aloud to you at this

20  time.  It appears to be in proper form.

21      As to Count 1, not guilty.  Count 2, not guilty.  Count 3,

22  guilty.  Count 4, guilty.  Count 5, guilty.  Count 6, guilty.

23      Counselors, do each of you desire for the jury to be

24  polled?

25          **MR. ROBERTS:**  The Government does not.

1        **THE COURT:**  Mr. Travis?

2        **MR. TRAVIS:**  As to Counts 3 through 6, please, if the

3   Court may.

4        **THE COURT:**  Thank you.  Ladies and gentlemen, what

5   that means is this, I indicated to you in the instructions that

6   your verdict has to be unanimous as to each count.  So I need

7   to know that each one of you feel that this is your verdict.

8      So just to be clear on the record, I'm going to ask

9   that -- or the procedure will be, I'll call your name; if you

10  voted not guilty as to Counts 1 and 2 and guilty as to 3, 4, 5

11  and 6, you simply tell me, Yes, that's my individual verdict;

12  yes, that's my verdict.  Understand?

13     Okay.  Karl Hudson?

14        **MR. HUDSON:**  Yes.

15        **THE COURT:**  Ricky Northington?

16        **MR. NORTHINGTON:**  Yes.

17        **THE COURT:**  Billy Comfort?

18        **MR. COMFORT:**  Yes.

19        **THE COURT:**  Toshiba Hodges.

20        **MS. HODGES:**  Yes.

21        **THE COURT:**  Stacie Ross?

22        **MS. ROSS:**  Yes.

23        **THE COURT:**  Heather Williams?

24        **MS. WILLIAMS:**  Yes.

25        **THE COURT:**  Antonio Garcia?

1        **MR. GARCIA:** Yes.

2        **THE COURT:** Danny Sullivan?

3        **MR. SULLIVAN:** Yes.

4        **THE COURT:** Tori Smith?

5        **MS. SMITH:** Yes.

6        **THE COURT:** Linda Lofton?

7        **MS. LOFTON:** Yes.

8        **THE COURT:** Joy Saylors?

9        **MR. SAYLORS:** Yes.

10       **THE COURT:** And Darry Crowell?

11       **MR. CROWELL:** Yes, ma'am.

12       **THE COURT:** Thank you. Satisfied Counselors?

13       **MR. TRAVIS:** Thank you, Your Honor.

14       **THE COURT:** Thank you.

15   Ladies and gentlemen, the attorneys can't stand at this

16 time and thank you for your service; but I can thank you on

17 their behalf. I hope you understand these are important

18 matters, a lots at stake and risk; and so it's important that

19 you do a very good job of listening and deliberating these

20 matters.

21   And it's obvious that you've done both. You've listened

22 very carefully and deliberated and reached a verdict. I'm

23 going to dismiss you finally from the jury room, which means

24 that I'll come back there to finally dismiss you. That gives

25 you an opportunity to ask me any questions that you might have

1  before I finally send you home and then dismiss you from there.

2  Okay?

3       You may return to the jury room.  After I speak with the

4  attorneys a moment, I will be there.  Thank you.

5       (JURY OUT AT 11:35 A.M.)

6           **THE COURT:**  Mr. Gamez, would you please stand for the

7  Court, please.  With respect to Counts 3, 4, 5 and 6, you have

8  been found guilty.  The Court will remand you to the custody of

9  the marshal service for you to be detained until sentencing.

10      Counselors, are there any matters that we need to take up

11  on the record?

12          **THE GOVERNMENT:**  Not on this case from the

13  Government, Your Honor, no.

14          **THE COURT:**  Mr. Travis?

15          **MR. TRAVIS:**  Just any renewal of the motions that

16  were made here or in the trial on behalf of Mr. Gamez, Your

17  Honor.

18          **THE COURT:**  They're noted and preserved for the

19  record.

20          **MR. TRAVIS:**  Thank you, Judge.

21          **THE COURT:**  The verdict form is filed.

22          **MR. ROBERTS:**  Thank you, Your Honor.

23          **MR. TRAVIS:**  Thank you, Your Honor.

24          **THE COURT:**  Thank y'all.

25              (THE TRIAL ENDED AT 11:36 a.m.)

1                    C E R T I F I C A T I O N

2

3      "I certify that the foregoing is a correct transcript from

4  the record of proceedings in the above-entitled matter,

5  February 6, 2013."

6

7                  /s/ Rita Davis Young
                   RITA DAVIS YOUNG, FCRR, RPR, BCR, CSR #1626
8                  Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25