IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LINO GAMEZ,**                                                                           **PETITIONER**

**v.**                                                                 **No. 2:11CR166-SA-JMV**

**UNITED STATES OF AMERICA**                                        **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Lino Gamez to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Gamez has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

**Section 2255 Proceedings**

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court

finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## Procedural Posture

Lino Gamez, a 21 year old man in 2011, met the victim "T.G."[1] when Gamez was 17 and T.G. was nine years old (Redacted Trial Transcript, Volume II, p. 112-13, R., 89-90). About the time T.G. was 12, she met Gamez again (RTT II, pp. 115-16, R., 92-93). Later, when Gamez was 21, he developed a sexual relationship with T.G. and took her, then aged 13, from Mississippi to Tennessee and had sexual intercourse with her on several occasions during the Summer and Fall of 2011 at his residence in Tennessee (RTT II, pp. 112, R., 89).

During 2011 Gamez and T.G. began texting each other and then hanging out together at Gamez's father's house in Mississippi (RTT II, pp. 116-17, R., 93-94). Gamez supplied T.G. with marijuana and alcohol (RTT II, pp. 121, 128, R., 98, 105). The two engaged in sexual intercourse (RTT II, pp. 121-23, R., 98-100). The intercourse happened first at Gamez's father's house around June 2011 and continued through Gamez's arrest in November 2011 (RTT II, pp. 125, R., 102). Soon thereafter Gamez took T.G. to Memphis, Tennessee, to Gamez's house or to the house of his friend "pretty much every day" during the summer of 2011 (RTT II, pp. 128-29, R., 105-06).

The relationship was discovered in November 2011. When FBI agents interviewed Gamez, he told them that he was born in 1989 (RTT II, pp. 155, 164, R., 132, 141). He also told them that he had had sex with T.G. four or five times at his father's house in Mississippi and "a few times" at Gamez's house in

---

[1] The court will use the "T.G.", instead of the victim's name to protect her privacy.

Tennessee (RTT II, pp. 157, R., 134). Gamez also admitted taking T.G. from Mississippi to his house in Tennessee (RTT II, pp. 165, R., 142).

A federal grand jury indicted Lino Gamez in a six-count indictment accusing him of two counts of inducing a minor to engage in sexually explicit conduct for the purpose of creating visual depictions of the sexually explicit conduct in violation of 18 U.S.C. § 2251(a), and four counts of traveling in interstate commerce for the purpose of engaging in illegal sexual conduct with a minor (statutory rape) in violation of 18 U.S.C. § 2423(b) (Indictment, Appellate Record, pages 27-29). As the government did not have exact dates of Gamez's travel across state lines to engage in sex with T.G., it used June 1, 2011, July 1, 2011, August 1, 2011, and November 1, 2011, and explained to the jury that, even though the travel had occurred many more times according to TG and Gamez, the only charges were three times over the Summer of 2011 and once right before Gamez was discovered and interviewed by the FBI. For the last four counts, the government erroneously placed the penalties for a violation of Title 18, United States Code, Section 2423(a) on a supplemental page to the indictment called "Penalties" (R., 30), even though the actual counts were in violation of Title 18, United States Code, Section 2423(b), as reflected in Counts Three, Four, Five, and Six of the Indictment.

Gamez filed a motion to suppress the voluntary statement he gave to FBI agents (R., pp. 65-70) which the District Court considered in a suppression hearing. After hearing witnesses and argument, and taking into account the motion to suppress and the government's response in opposition (R., pp. 71-74), the District Court denied the suppression motion (R., 76, Transcript of Suppression Hearing, R., pp. 249-86).

Gamez did not plead guilty; instead, contrary to the advice of his attorney, he went to trial. A jury convicted Gamez after a two-day trial on Counts Three, Four, Five, and Six: traveling in

- 4 -

interstate commerce for the purpose of engaging in illegal sexual conduct with a minor (Verdict, R., p. 114). Gamez filed a motion for judgment of acquittal (R, 116). The government responded in opposition (Document 40, R., 118-20). Gamez filed a supplement, but mentioned the minor victim's name several times in it (Document 41). The government responded in opposition to the supplemental motion (Document 43, 125-28) and also filed a Motion to Seal Gamez's supplemental Motion for Judgment of Acquittal (R., 122-24), which the court granted (R., 130). The court denied Gamez's Motion for Judgment of Acquittal (Order, R., 131).

After United States Probation Service completed a presentence investigation report ("PSR"), the District Court sentenced Gamez to serve four concurrent ten-year terms of incarceration. The Judgment in a Criminal Case was filed in the District Court Clerk's office on December 17, 2012 (Judgment in a Criminal Case, R., 136-41). Gamez filed a notice of appeal the next day, December 18, 2012 (R., 142).

The Fifth Circuit Court of Appeals affirmed Gamez's conviction in a *per curiam* unpublished opinion on January 13, 2014. *United States v. Gamez*, 553 Fed. Appx. 430 (2014). He filed the instant motion under 28 U.S.C. § 2255 by signing it on June 16, 2014. It was marked received and filed in the District Court Clerk's Office on June 19, 2014.

In the instant § 2255 motion, Gamez presents the following grounds for relief – all resting on a theory of ineffective assistance of counsel (restated by the court for the sake of brevity and clarity):

(1) Counsel failed to establish that Gamez and T.G. had a sexual relationship *before* he crossed state lines, that the sexual acts were "consensual" (not for the purpose of pecuniary gain).

(2) Counsel failed to call witnesses to show that T.G. frequently lived with Gamez in Tennessee, rather than at her mother's home in Southaven, Mississippi. Counsel also failed to call witnesses who could establish that T.G.'s mother knew about and approved of the sexual relationship (contrary to her testimony at trial). Thus, counsel failed to argue that Gamez was not taking T.G. across state lines to have sex with her, but to take her "home."

(3) Counsel should have objected to the jury instruction regarding Tennessee's statutory rape statute, as the statute in question, 18 U.S.C. § 2423(b), involves only the crossing of state lines with the intent to commit an illegal sexual act, rather than actually participating in the act.

(4) Counsel should have argued that the repeated travel across state lines to have sex with a minor constituted a single, continuing, crime, rather than a series of discrete crimes.

## Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

## Grounds One and Two: Failure to Establish a Prior Sexual Relationship with the Victim – and that the Victim Sometimes Stayed Overnight with Gamez for Days at a Time

In Ground One, Mr. Gamez argues that counsel should have put on witnesses to prove that the victim lived with Gamez in Tennessee for days at a time – and that he did not transport her across state lines for pecuniary gain.[2] Thus, Gamez believes that counsel should have argued that, on many occasions, he was not transporting T.G. across state lines to engage in sexual intercourse with her, but to take her "home." Mr. Gamez believes such an argument would have undermined the element of "intent" to have sexual intercourse with a minor.

However, as the Fifth Circuit has held:

> Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (internal citations omitted); *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985); *Sayre v. Anderson,* 238 F.3d 631, 635-636 (5th Cir. 2001). Further, courts are reluctant to grant *habeas corpus* relief based upon uncalled witnesses "because the presentation of testimonial evidence is a matter of trial strategy . . . ." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).

In any event, counsel was wise not to pursue such a strategy – and, in testimony before the court, warned Mr. Gamez of the dangers of calling such witnesses:

> **Mr. Travis:** Mr. Gamez, at this point, the government has rested their case. They're not going to call any more witnesses. The jury has heard from them. We have no other witnesses, I've discussed with you, that could have helped your case here at this trial. Remember I talked to you about that?

---

[2] As the statute at issue in this case does not contain the element of pecuniary gain, this claim for relief is wholly without merit and will be denied.

>    **The Defendant:** Yes, sir.
>
>    **Mr. Travis:** And that was disappointing to you, but I indicated to you that they would help prosecute you rather than defend you; is that correct?
>
>    **The Defendant:** Yes, sir.

RTT II at 100. As set forth above, Mr. Gamez acknowledged that other witnesses would have hurt his defense.

Indeed, circuit precedent makes clear that, to complete a violation of 18 U.S.C. § 2423, engaging in illicit sexual activity need not be the only motivation for crossing state lines:

> [I]t is not necessary to a conviction under the Act that the sole and single purpose of the transportation of a female in interstate commerce was such immoral practices. It is enough that one of the dominant purposes was prostitution or debauchery. It suffices if one of the efficient and compelling purposes in the mind of the accused in the particular transportation was illicit conduct of that kind. The illicit purpose denounced by the Act may have coexisted with other purpose or purposes, but it must have been an efficient and compelling purpose.

*United States v. Campbell*, 49 F.3d 1079, 1082–83 (5th Cir. 1995)(internal citations omitted). The evidence presented at trial established that Mr. Gamez, who was 21 years old at the time, nearly every day for a period of months, provided alcohol, marijuana, and prescription pills to a 14-year-old girl and had sex with her. The evidence established that T.G.'s family strongly disapproved of her relationship with Gamez. To keep her family from interfering, she and Gamez would communicate by phone, arranging a time when she could sneak out and meet him around the corner from her house. Gamez repeatedly arranged to pick her up from her home in north Mississippi so that he could transport her either to his apartment or to his father's trailer, and they engaged in sexual intercourse in Tennessee nearly every time he transported her there. At one point she found on her cell phone somewhere between 30 and 40 videos – and even more pictures –of her and Gamez engaged in sexual activity. Upon reviewing this evidence, a

reasonable juror could find that sexual intercourse with T.G., a minor, was "an efficient and compelling purpose" for Gamez to have transported T.G. across state lines. *Campbell, supra.*

Indeed, the fact that Gamez was so attracted to T.G. that kept her at his residence for days on end would tend to bolster the government's argument that he transported her across state lines for the purpose of having illicit sex with her. Thus, Mr. Gamez has shown neither that counsel's decision not to present testimony of Gamez's ongoing sexual relationship with T.G. constituted deficient representation, nor that he suffered prejudice to his legal position as a result of decision. Gamez's claims for relief in Grounds One and Two are therefore without merit and will be denied.

### Ground Three: Counsel Should Have Objected to the Jury Instruction Regarding Tennessee's Statutory Rape Law

Mr. Gamez argues in Ground Three that counsel should have objected to the jury instruction setting forth the elements of the Tennessee statutory rape law. He argues that the federal statute of his conviction did not require a statutory rape to occur, only that he crossed state lines with the *intent* to engage in illicit sexual activity with a minor. Proof that Mr. Gamez *actually engaged in* illicit sex with a minor goes a long way towards establishing that he *intended* to do so when he crossed state lines, citing *United States v. Bredimus*, 352 F.3d 200, 207 (5th Cir. 2003). First, the fact that he crossed state lines numerous times and had sexual intercourse with T.G. only bolsters this conclusion, if only to prove lack of mistake or accident. Put another way, the government would have had far more difficulty proving Gamez's intent to have illicit sex if the evidence established that Gamez never *actually* engaged in sexual intercourse with T.G. after crossing state lines. In addition, there is no requirement that the government present the jury with only the minimum quantum of proof to sustain a conviction.

Gamez violated 18 U.S. Code, Section 2423(b). He argues that any Tennessee statutory rape law is irrelevant to the crime; however, he misunderstands the crime set forth in § 2423(b). The Indictment charged in Counts Three through Six that Gamez on various dates in 2011:

> knowingly traveled in interstate commerce, from DeSoto County, Mississippi to Shelby County, Tennessee, for the purpose of engaging in an illicit sexual act with a person under 18 years of age, that is, statutory rape [of] a minor, a violation of Tennessee Code, Section 39-13-506(b), all in violation of Title 18, United States Code, Section 2423(b).

Indictment, Appellate Record, pages 27-29.

Section 2423 reads, in relevant part:

> A person who travels in interstate commerce … for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423. Thus, the elements of the offense are: (1) that Gamez traveled in interstate commerce; and (2) that Gamez traveled for the purpose of engaging in illicit sexual conduct. A part of the crime is that the travel be done for the "illicit sexual conduct," which, in this case, was to engage in sexual relations with a minor, constituting statutory rape under Tennessee law.

The instructions given by the court necessarily included the elements of statutory rape under Tennessee law:

> Under Tennessee state law, Tennessee Code Section 39-13-506(b), engaging in sexual intercourse with a minor is the crime of statutory rape if the minor is less than 15 years of age and the defendant is at least 4 years older than the minor.

Doc. 35. The instruction was necessary under Section 2423(b) for the jury to determine whether Gamez had traveled on the four occasions with the intent to engage in illicit sexual conduct, specifically sexual intercourse with a minor under the age of 15 and more than four years younger than him, in violation of the state law where the intercourse occurred (Tennessee). Thus, counsel provided effective assistance in choosing not to object to the jury instruction at issue. Attorneys are

- 10 -

not required by the Sixth Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990); *see also Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.")  This ground for relief is without merit and will be denied.

### Ground Four:  Counsel Should Have Objected to the Characterization of Each Border Crossing as a Separate Offense

The text of § 2423 is set forth in the section above, and it prohibits traveling in interstate commerce with the intent to engage in illicit sexual conduct.  Each crossing of state lines with such intent is a separate criminal act; the "unit of prosecution" is each *crossing*.  The Supreme Court recognized this by overturning one of two convictions under the Mann Act (18 U.S.C. § 2421) because the defendant had transported two women for immoral purposes, but in a single trip.  *Bell v. United States*, 349 U.S. 81, 89 (1955).  Hence, the number of crossings, not the number of victims, is the prosecutable unit.  *Id*.  The concept of each trip through interstate commerce constituting a separate offense holds true in other situations, such as transportation of counterfeit securities under 18 U.S.C. § 2314 and transport of stolen vehicles and firearms.  *United States v. Kitowski*, 728 F.2d 1418, 1423-1424 (11th Cir. 1984) (citing *United States v. Bullock*, 615 F.2d 1082 (5th Cir. 1980)). Testimony at trial established that during the summary of 2011 Gamez traveled across state lines with T.G. "pretty much every day" to engage in sexual intercourse with her.  RTT II, 128-129.  Gamez was only charged under § 2423 for offenses involving four trips between Mississippi and Tennessee; however, the government could have charged Gamez separately for each of those nearly daily trips.  Thus, Gamez was properly charged for four separate counts of violating 18 U.S.C. § 2423, and counsel provided effective legal assistance in deciding not to object on the basis that the separate trips constituted a single crime.  *See Clark, supra.*

### Conclusion

In sum, none of Mr. Gamez's grounds for relief has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 17th day of July, 2017.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**